T.C. Memo. 2017-110

UNITED STATES TAX COURT

LARRY GENESER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15451-13.                                   Filed June 12, 2017.

<u>James R. Monroe</u> and <u>Robert L. Myott</u>, for petitioner.

<u>Stephen A. Haller</u>, <u>Lynn M. Barrett</u>, and <u>Catherine S. Tyson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>:  Respondent determined a deficiency in petitioner's 2010

Federal income tax of $329,072 and additions to tax under section 6651(a)(1)[1] of

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the

(continued...)

[*2] $74,041, section 6651(a)(2) of $36,198, and section 6654(a) of $7,057.  After concessions, the issues for decision are whether petitioner for tax year 2010:  (1) is liable for self-employment tax under section 1401; (2) is entitled to an interest expense deduction under section 163; (3) is entitled to a business expense deduction under section 162;[2] and (4) is liable for additions to tax under sections 6651(a)(1) and (2) and 6654(a).[3]

## FINDINGS OF FACT

Some of the facts are stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioner resided in Iowa when the petition was filed.

---

[1](...continued)
nearest dollar.

[2]Respondent allowed petitioner a standard deduction for 2010.  Petitioner contends that if we find he is not entitled to business expense deductions for interest and other expenses he therefore is entitled to deduct those items on Schedule A, Itemized Deductions, if their sum is greater than the amount allowable as a standard deduction.  For further discussion, see infra note 7.

[3]The parties agree that petitioner's filing status was "married filing separately".  Petitioner claims he is entitled to an additional exemption for his spouse under sec. 151(b); however, he did not raise that issue on his original petition, his amendment to petition, or his amended petition.  Pursuant to Rule 34(b)(4), any issues that petitioner did not raise in his assignments of error are deemed waived.  See, e.g., Funk v. Commissioner, 123 T.C. 213, 215 (2004).

**[\*3]**  Petitioner sold insurance as an independent contractor for American Income Life Insurance Co. (AIL) from February 20, 1981, through October 4, 2007, during which he received commission advances from AIL, which created a debit balance and were repaid from his future earned commissions.  Petitioner and AIL entered into several State general agent contracts.  One contract (effective October 20, 2003) set forth a vesting schedule for commissions that was dependent on an agent's length of service at AIL and stated that "all (100%) of the commissions earned following the General Agent's termination date shall be vested" if the agent has "completed ten years of continuous service".[4]  The last contract between petitioner and AIL (effective August 1, 2004) stated that petitioner, for the one-year period beginning on the date of termination, "will not engage in the life or health insurance business in any territory possessed by the State General Agent during the year proceeding termination, utilizing the union, credit union, or association sales procedures of the company."  That contract also stated that "[c]ommissions are determined by the schedule in effect at the time the insurance is issued".

On October 4, 2007, petitioner's debit balance with AIL was $1,242,591. Petitioner did not perform any services for AIL after his termination.  On

---

[4]The 10-year period begins at the start of an individual's employment.

[*4] December 19, 2007, petitioner and CFG LLC entered into a loan and security agreement pursuant to which CFG lent $2,209,945 to petitioner and petitioner assigned all future earned commissions from AIL to CFG as collateral. The loan proceeds were disbursed as follows: $209,945 to CFG for the loan origination fee; $407,691 to Bayview Loan Servicing, LLC (BLS), to repay a loan that petitioner claims was for his former office building; $1,242,591 to AIL to repay petitioner's debit balance; and $349,718 to petitioner.

In 2010 AIL reported $903,707 as nonemployee compensation to petitioner on Form 1099-MISC, Miscellaneous Income.[5] Petitioner did not file a return for 2010. Respondent prepared a substitute for return for petitioner pursuant to section 6020(b). On April 8, 2013, respondent sent petitioner a notice of deficiency for tax year 2010 that determined petitioner: (1) had $903,707 of nonemployee compensation; (2) was liable for self-employment tax of $37,446; and (3) was liable for additions to tax under sections 6651(a)(1) and (2) and 6654(a).

Petitioner timely filed a petition for redetermination of the deficiency and the additions to tax. Petitioner claims he is entitled to a $119,829 interest expense

---

[5]AIL did not directly pay petitioner any amount in 2010; rather, AIL directly paid the renewal commissions to CFG pursuant to the loan and security agreement.

**[\*5]** deduction and a $165 business expense deduction for loan service fees. On brief petitioner conceded he received $903,707 in nonemployee compensation for 2010. We will address the issues of self-employment tax, petitioner's claimed deductions, and the additions to tax in turn below.

## OPINION

### I.    Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer ordinarily bears the burden of proving those determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace. Deputy v. du Pont, 308 U.S. 488, 493 (1940). Taxpayers must comply with specific requirements for any deductions claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers are required to maintain records sufficient to establish the amounts of income, deductions, credits, and other items reported on their Federal tax returns. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. The evidence does not establish that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

[*6]   The Commissioner bears the burden of production with respect to a taxpayer's liability for additions to tax.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the burden of production is met, the taxpayer bears the burden of proof, including the burden of proving reasonable cause for his late filing or late payment.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

II.    Self-Employment Tax

Section 1401(a) and (b) imposes a tax on self-employment income.  Self-employment income is defined as "the net earnings from self-employment derived by an individual * * * during any taxable year".  Sec. 1402(b).  Net earnings from self-employment are defined as "gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business".  Sec. 1402(a).  "The self-employment tax provisions are broadly construed to favor treatment of income as earnings from self-employment."  Bot v. Commissioner, 353 F.3d 595, 599 (8th Cir. 2003), aff'g 118 T.C. 138 (2002).  Gross income derived from an individual's trade or business may be subject to self-employment tax even when it is attributable in whole or in part to services rendered in a prior taxable year.  Sec. 1.1402(a)-1(c), Income Tax Regs.  Section 1402(k) exempts the termination

[*7] payments of insurance salesmen from self-employment tax as long as, among other requirements, the payments "do[] not depend to any extent on length of service * * * performed for such company (without regard to whether eligibility for payment depends on length of service)".

Petitioner's commission payments credited toward his account in 2010 were dependent on his length of service at AIL. Accordingly, petitioner does not meet the requirements of section 1402(k). Petitioner's testimony that he "absolutely" meets all the requirements of section 1402(k) exemplifies self-serving testimony and, apart from being neither convincing nor persuasive, is inherently incredible. Petitioner may not exclude the $903,707 in commission payments from his net earnings from self-employment under section 1402(a), and those earnings are therefore subject to self-employment tax under section 1401. See Rule 142(a).

III.    Business Interest and Loan Service Fee Deductions

Section 162(a) allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Section 163(a) generally allows a deduction for any interest paid or accrued on indebtedness in the taxable year. Section 163(h)(1) provides an exception to this general rule of deductibility for "personal interest". Section 163(h)(2)(A) defines personal interest to mean any interest other than

[*8] "interest paid or accrued on indebtedness properly allocable to a trade or business".

Petitioner argued that the commission advances from AIL and the $349,718 of loan proceeds that he received were used solely to pay business expenses but acknowledged that he was able to use both to pay personal expenses. Petitioner also testified that he made no attempt to distinguish between those commission advances and loan proceeds used to pay personal expenses and those used to pay business expenses that might permit deduction.

Petitioner did not introduce any evidence that would allow us to make any reasonable allocation between personal expenses and business expenses for either the commission advances or the $349,718 of loan proceeds that he received. Nor did he introduce any evidence to substantiate that the $407,691 disbursed to BLS was actually used to repay a loan for his former office building (or that the building was used as an office for his business). We therefore cannot properly allocate between personal expenses and business expenses the $2,209,945 of loan proceeds.[6] See sec. 1.163-8T(a)(3), Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987) ("[I]nterest expense on a debt is allocated in the same manner

---

[6]The CFG loan comprises $209,945 to CFG for the loan origination fee, $407,691 to BLS to repay a loan for petitioner's purported former office building, $1,242,591 paid to AIL, and $349,718 paid to petitioner.

**[*9]** as the debt to which such interest expense relates is allocated. Debt is allocated by tracing disbursements of the debt proceeds to specific expenditures."). Because we are unable to make a reasonable allocation, we do not consider whether repayment of the CFG loan during 2010 gave rise to deductible interest. Accordingly, we hold that petitioner is not entitled to an interest expense deduction for 2010.

Additionally, because we are unable to make a reasonable allocation between business and personal use of the loan proceeds, we are unable to determine and therefore do not consider whether the loan service fees gave rise to a deduction under section 162. Accordingly, we hold that petitioner is not entitled to a business expense deduction for loan service fees for 2010.[7]

## IV.   Additions to Tax

Section 6651(a)(1) provides for an addition to tax for failure to timely file a return unless the taxpayer proves that the failure was due to reasonable cause and not due to willful neglect. Section 6651(a)(2) provides for an addition to tax for failure to timely pay the amount shown as tax on a return unless the taxpayer

---

[7]In accordance with our holding herein petitioner is not entitled to an itemized deduction for interest expense. See sec. 163(h)(1) (disallowing deductions for personal interest). Similarly, petitioner's loan service fees are nondeductible personal expenses, and therefore petitioner is not entitled to an itemized deduction for loan service fees.

[*10] proves that the failure was due to reasonable cause and not due to willful neglect.  Section 6654(a) imposes an addition to tax on a taxpayer who fails to make required payments of estimated tax.

Petitioner did not file an income tax return for 2010.  Respondent prepared a substitute for return in accordance with his authority under section 6020(b), and petitioner did not pay the amount shown as due.  See sec. 6651(g)(2); Cabirac v. Commissioner, 120 T.C. 163, 170-173 (2003), aff'd without published opinion, 94 A.F.T.R.2d (RIA) 2004-5490 (3d Cir. 2004).  The return respondent prepared met the requirements for a substitute for return under section 6020(b).  See Wheeler v. Commissioner, 127 T.C. 200, 210 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).  Respondent satisfied his burden of production under section 6651(a)(1) and (2).

Petitioner points to his medical conditions as reasonable cause for his failure to both timely file a tax return and timely pay the amount shown as due on the return.[8]  Petitioner's wife testified that while petitioner was diagnosed with cancer in 2010, he was never admitted to a hospital for an overnight stay and that the cancer treatments finished in March 2011.  Petitioner failed to offer credible

---

[8]Petitioner acknowledged on brief that his subjective belief that he did not owe any Federal income tax (because of a potential net operating loss carryover) does not rise to the level of reasonable cause that would negate additions to tax under sec. 6651(a)(1) and (2).

[*11] testimony that would allow us to conclude that he had reasonable cause for either not filing a 2010 tax return or not paying the amount shown as due on the return. We find that petitioner's medical conditions during the relevant time do not constitute reasonable cause for his failure to timely file a tax return or his failure to timely pay the amount shown on the return. Accordingly, petitioner is liable for the additions to tax under section 6651(a)(1) and (2).

Section 6654(a) imposes an addition to tax for failure to make required estimated payments. The required annual payment of estimated tax is equal to the lesser of (1) 90% of the tax shown on the return for the taxable year (or, if no return is filed, 90% of the tax for such year), or (2) 100% of the tax shown on the taxpayer's return for the immediately preceding taxable year. Sec. 6654(d)(1)(B). Respondent established that petitioner failed to file a return for 2009 or 2010 and that he had actual tax liability for 2010 but failed to make the required payments. Therefore petitioner's required annual payment for 2010 is 90% of the tax owed for that year. Respondent has satisfied his burden of production for an addition to tax under section 6654(a). See Wheeler v. Commissioner, 127 T.C. at 211. Section 6654 does not contain a general exception for reasonable cause or good faith, and petitioner has not shown that he satisfied any of the statutory exceptions under section 6654(e). See Mendes v. Commissioner, 121 T.C. 308, 323 (2003).

**[*12]** Accordingly, petitioner is liable for the addition to tax under section 6654(a) for 2010.

We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.